QUENTIN JARVIS HILL, appellant, v. ELECTRONICS CORPORATION OF AMERICA and THE PARTLOW CORPORATION, appellees.

No. 50395.

582 

FEBRUARY 6, 1962.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellant.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellee Electronics Corporation of America.

Jones & Hoffmann, of Des Moines, for appellee The Partlow Corporation.

GARFIELD, C. J.—The question presented is whether the district court of Polk County, Iowa, obtained jurisdiction over two foreign corporation-defendants by service of notice upon the secretary of state. The Polk County court held jurisdiction was not thereby obtained and sustained the special appearances of these defendants. Plaintiff has appealed.

Plaintiff-Hill's petition alleges he was injured May 4, 1959, by the explosion of a boiler in a plant of the Meredith Publishing Company (herein called Meredith), in Des Moines, Iowa, where he was employed; that defendants Electronics Corporation of America and Partlow Corporation (herein called Electronics and Partlow) manufactured certain parts of the electrical control system for the boiler; the explosion was caused by the negligence of these and other defendants. One count of the petition states plaintiff relies on the doctrine of res ipsa loquitur. Another count alleges specific negligence of each of these defendants in manufacturing, supplying and installing the devices for the control system and failing to warn they were dangerous.

Plaintiff's petition also states Electronics is a Massachusetts corporation with its principal place of business at Cambridge, that state; Partlow is a foreign corporation with its principal place of business at New Hartford, N. Y.; neither defendant is authorized to do business in Iowa; "said defendants transact business in Iowa without a certificate of authority and are therefore deemed to have appointed the Secretary of State their attorney for service of process."

On the day the petition was filed the sheriff of Polk County delivered the original notice of the action addressed to the defendants, to the secretary of state.

Electronics' special appearance, filed pursuant to rules 66 and 104(a), Rules of Civil Procedure, alleges it is a Massachusetts corporation not qualified to do business in Iowa, with-

out permit to do so, it has not done business in Iowa, has no office or other place of business here, is not subject to service of original notice here, and the secretary of state is not authorized by law to receive such notice in this action.

Partlow's special appearance asserts it is not licensed to do, and is not doing, any business in Iowa so as to be amenable to process here. An attached affidavit states Partlow has never had any office, agency or business in Iowa nor was it registered or licensed to do business here, its only dealings concerning Iowa are that its products are sometimes incorporated in equipment shipped into or assembled in Iowa by contractors and others operating here, all such dealings are solely in interstate commerce.

Pursuant to stipulation a hearing was had before the court on these special appearances. The stipulation recites both defendants are foreign corporations, not authorized to do business in Iowa, "and both have been served with notice under Section 120, Chapter 321, *Laws of the 1958 Code of Iowa,* by service upon the Secretary of State as service upon foreign corporations doing business in Iowa." It seems clear the words we have italicized were intended to be "Laws of the 58th General Assembly of Iowa." Code section 321.120 (in Code chapter 321) refers to a wholly unrelated matter.

At the hearing plaintiff's counsel offered testimony of Mr. Victor Wilder and Mr. L. L. Daubert, sales engineer and president respectively, of Deco Engineering Products Corporation (herein called Deco), an Iowa corporation located in Des Moines. From this evidence it appears Deco since April 1, 1958, has been the distributor in Iowa, Nebraska and Rock Island County, Illinois, of products of the combustion control division of Electronics, and since January 1, 1956, has been sole sales representative in Iowa and Nebraska for Partlow. However, it is also shown Deco had nothing to do with any part installed in the boiler which exploded at the Meredith plant. We understand the boiler was made in Cleveland, Ohio, and the alleged defective parts furnished by these defendants were ordered from and shipped to Cleveland and there installed in the boiler or electrical control system therefor.

I. Plaintiff-appellant assigns one error as to each specially appearing defendant—in sustaining its special appearance "for the reason it was transacting business in Iowa without a certificate of authority and thereby is deemed to have appointed the Secretary of State its attorney for service of process."

Plaintiff opens his printed argument by quoting the last sentence of section 120, chapter 321, Laws of the 58th General Assembly, known as the Iowa Business Corporation Act: "If any foreign corporation shall transact business in this state without a certificate of authority, it shall by transacting such business be deemed thereby to have appointed the secretary of state its attorney for service of process." This quotation is followed by the assertion: "The only question on this appeal is whether these foreign corporations transacted business in Iowa without a certificate of authority and thereby appointed the secretary of state their agent for service of process."

Chapter 321, Laws of the 58th General Assembly, took effect July 4, 1959 (section 3.7, Code, 1958), two months after the boiler exploded at the Meredith plant. Defendants argue section 120 of the chapter operates prospectively, not retrospectively, and does not apply to the present action. They also say that if chapter 321 does apply here, section 103 thereof provides in effect that doing what they did "shall not be considered to be transacting business in this state, for the purposes of this Act * * *."

Plaintiff's reply argument asserts that if chapter 321 of the 58th General Assembly does not apply to the present action the district court could acquire jurisdiction of these defendants under section 494.2, Code, 1958, by the service made upon the secretary of state. So far as shown, this is the first indication that plaintiff's claim the court acquired jurisdiction of these defendants by service on the secretary of state was not bottomed on section 120, chapter 321, Laws 58th General Assembly.

II. It seems to us plaintiff is not in position to contend for the first time in his reply argument here that section 120, chapter 321, Laws of the 58th General Assembly, does not apply to the present case or that service of notice upon these defend-

ants, through the secretary of state, was not under this section. This contention was not raised in the district court nor in the opening brief here and is quite inconsistent with the position there taken. It is an apparent attempt by plaintiff to mend his hold here.

We have many times declined to consider a contention an appellant did not raise in the trial court. Harlan Production Credit Assn. v. Schroeder Elevator Co., and citations, 253 Iowa 345, 349, 350, 112 N.W.2d 320, 323. We therefore assume, without so holding on the merits of the proposition, that section 120, chapter 321, 58th General Assembly, applies to the present case and service of notice on these defendants was pursuant thereto. As we have tried to explain, this accords with plaintiff's position before his reply brief was filed.

■ III. Another section of chapter 321, Laws 58th General Assembly, applies to the present case as clearly as section 120 does. We refer to section 103. It states in part: "Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, *for the purposes of this Act*, by reason of carrying on in this state any one or more of the following activities: * * * [Emphasis added.]

"5. Effecting sales through independent contractors.

"6. Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts. * * *

"9. Transacting any business in interstate commerce."

Under this section neither of these defendants has at any time transacted business in Iowa for the purposes of chapter 321. Deco was not more than an independent contractor in effecting sales of their products. It purchased products of Electronics and resold them in the designated territory. Deco sent orders to Partlow in New York for its products which, if accepted, Partlow shipped direct to the purchaser without passing through Deco's hands. Partlow billed the customer direct. A representative of Electronics visited Deco two or three times

a year to consult on sales problems and stimulate sales. Deco represented 30 to 40 manufacturers in all.

Plaintiff argues section 103 of chapter 321 was not intended to lay down tests as to what shall be considered transacting business in this state for the purpose of amenability to process but was designed merely to state activities not considered transacting business for the purpose of requiring a certificate of authority to do business here. We cannot accept this construction of section 103. It lists activities which "shall not be considered to be transacting business in this state, *for the purposes of this Act*," not merely for the single purpose of requiring a certificate of authority to do business here.

The intent of the legislature which is controlling is to be gathered from the statute itself. We must give the statute the interpretation its language calls for and not speculate as to probable legislative intent apart from the wording used. Ashby v. School Township of Liberty, 250 Iowa 1201, 1214, 98 N.W.2d 848, 857, and citations; Cook v. Bornholdt, 250 Iowa 696, 698, 95 N.W.2d 749, 751; Cowman v. Hansen, 250 Iowa 358, 361–364, 92 N.W.2d 682, 684, 685. "We are not called upon to determine what the legislature may have intended except insofar as its intent is expressed in the statute." In re Guardianship of Wiley, 239 Iowa 1225, 1230, 34 N.W.2d 593, 595.

IV. The result herein reached accords with our latest decision in Mayer v. Wright, 234 Iowa 1158, 15 N.W.2d 268, on what constitutes doing business in this state for the purpose of subjecting a foreign corporation to the jurisdiction of our courts. There representatives of the foreign corporation conferred with the Iowa company handling its products for the purpose of stimulating sales. In this and other respects the case seems as strong as the present one. It is true Mayer v. Wright preceded the case of International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057, upon which plaintiff places much reliance.

The Shoe Company case applies a new yardstick by which a state may acquire personal jurisdiction over a foreign corporation without violating due process under the Federal Constitution. It holds "due process requires only that in order to subject

a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (Page 316 of 326 U. S., page 158 of 66 S. Ct., page 102 of 90 L. Ed., page 1061 of 161 A. L. R.) See article by Professor Willis L. M. Reese and another, 44 Iowa Law Review 249, 251, 252; Note id. at pages 347, 348; Note 4 Drake Law Review 18; Annotations 2 L. Ed.2d 1664, 1665.

It seems clear International Shoe Co. v. Washington expands the permissible scope of state jurisdiction over foreign corporations. Actual holding of the case is that the State of Washington, as its highest court held, could impose an unemployment compensation tax on a foreign corporation employing between 11 and 13 resident salesmen in the state, with authority to exhibit samples and solicit orders, whose annual commissions exceeded $31,000, and that Washington courts could acquire jurisdiction of a suit to recover the tax from the corporation. The opinion points out more than once that the obligation sued upon arose out of the corporation's activities within the state.

Plaintiff concedes the supreme court has not, in the Shoe Company case or others, held the state courts must take jurisdiction of an action against a foreign corporation under any particular facts. Obviously the question of due process arises in cases of this kind only when a state asserts jurisdiction, not when it refrains therefrom. Roberts v. Evans Case Co., 7 Cir., Ill., 218 F.2d 893, 895; Pulson v. American Rolling Mill Co., 1 Cir., Mass., 170 F.2d 193, 194, 195. Plaintiff says, however, our attitude has usually been to sustain such jurisdiction to the extent the supreme court has held there is no violation of due process in so doing.

We deem it proper to express approval of a broadened concept of jurisdiction over foreign corporations, especially in actions to enforce obligations arising out of their activities within the state. However, upon the considerations stated in Divisions II and III hereof we must upon this appeal abide by the provisions of chapter 321, Laws of the 58th General Assembly,

and affirm the trial court's denial of jurisdiction over these specially appearing defendants.

It has been said the extent to which a state chooses to exercise jurisdiction over a foreign corporation "is a matter for the law of the state as made by its legislature." Pulson v. American Rolling Mill Co., cited last above. Also, "It is a legislative, not judicial, function to extend or enlarge jurisdiction over foreign corporations * * *." Rufo v. Bastian-Blessing Co. (1961), 405 Pa. 12, 173 A.2d 123, 129.

V. One other contention of plaintiff should not be ignored. After these special appearances were sustained the 59th General Assembly passed chapter 287, effective July 4, 1961, pending the appeal to this court. It provides: "If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or * * * commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by the foreign corporation for the purpose of service of process or original notice on such foreign corporation and shall be deemed to constitute the appointment by the foreign corporation of the secretary of state * * * to be its true and lawful attorney upon whom may be served all lawful process or original notice in actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process or original notice against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the state of Iowa."

Plaintiff suggests these defendants committed a tort in whole or in part in Iowa against a resident thereof and, under this chapter, by such acts were doing business here for the purpose of service of original notice. It is doubtful at best if the alleged tort was committed in whole or in part in Iowa although the injury occurred here. Rufo v. Bastian-Blessing Co., supra, 405 Pa. 12, 173 A.2d 123, 128, 129, and citations. However, we need not decide the point.

■ We are clear this statute has no application to the present case. As a rule all statutes are to be construed as prospective in operation unless the contrary is expressed or clearly implied. The rule is subject to an exception where the statute relates solely to remedies or procedure. It cannot be said chapter 287 of the 59th General Assembly is merely remedial or procedural. It affects substantive rights as well. It establishes a new basis for jurisdiction over a foreign corporation. Nothing in the law indicates it was intended to operate retrospectively to a case already decided by the trial court. Davis v. Jones, 247 Iowa 1031, 78 N.W.2d 6, and citations; Mayer v. Wright, supra, 234 Iowa 1158, 1161, 15 N.W.2d 268, 270; Summers v. Skibs A/S Myken, E. D. Pa., 184 F. Supp. 745, and citations page 749. See also Jacobs v. Miller, 253 Iowa 213, 218, 111 N.W.2d 673, 676, and citation; Manilla Community School District v. Halverson, 251 Iowa 496, 101 N.W.2d 705, and citations.

■ VI. Perhaps we should observe that these special appearances were direct, not collateral, attacks on the court's jurisdiction and the burden to show jurisdiction rested on plaintiff. Mayer v. Wright, supra, 234 Iowa 1158, 1162, 1163, 15 N.W.2d 268, 270, and citations. We must hold the showing was insufficient.—Affirmed.

All JUSTICES concur.